IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**WILLIAM H. POPE**                                                            **PLAINTIFF**

Versus                                      **CIVIL ACTION NO. 5:12-CV-83-DCB-MTP**

**MICHAEL J. ASTRUE,**[1]
**Commissioner of Social Security Administration**               **DEFENDANT**

### Report and Recommendation

Plaintiff William H. Pope brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner denying his claim for a Period of Disability and Disability Benefits. The matter is now before the court on the Plaintiff's Brief in Support of Judicial Review [11], on the Defendant's Motion to Affirm the Decision of the Commissioner [14], and on the Plaintiff's Response in Opposition to Defendant's Motion to Affirm [16]. Having considered the pleadings, the transcript of the record, and the applicable law, and being thus fully advised in the premises, the undersigned recommends that this matter be remanded to the Commissioner for further findings at Step Three of the Administrative Law Judge's analysis as set forth herein.

### Procedural History

On February 9, 2010, Plaintiff filed a Title II application for a Period of Disability and Disability Benefits beginning May 16, 2007. [10] at 14.[2] The claim was initially denied and again

---

[1] Effective February 14, 2013, Carolyn W. Colvin became the acting Commissioner of the Social Security Administration.

[2] For ease of reference and pursuant to the court's Order [5], the administrative record is cited to herein by reference to the court docket number, docket exhibit number and docket page number in the federal court record [NOT the Administrative Record page number].

denied on reconsideration, which led the Plaintiff to request a hearing before an Administrative Law Judge (ALJ). *Id.* The Plaintiff received his hearing before ALJ Willie Rose on February 3, 2011, who rendered his decision to deny the Plaintiff's claim on March 1, 2011.[3] *Id.* at 11. The Plaintiff proceeded to file his application to the Appeals Council on April 14, 2011, and on April 18, 2012, the Appeals Council informed the Plaintiff that his appeal had been denied. *Id.* at 5. The Plaintiff filed his claim before this court on June 15, 2012.

## Factual and Medical History

Plaintiff, who was forty-three years old at the time of his application, alleges that he qualifies for a period of disability and disability benefits and that the Commissioner improperly denied these benefits through the rulings of the ALJ and the Appeals Council.

Born August 1, 1967, Plaintiff received a college degree from Rhodes College and completed one year of theological seminary at Columbia Seminary. [10] at 43. Prior to his alleged disability onset date of May 16, 2007, Plaintiff worked jobs such as a machinist, a sales representative, a waiter, and a psychiatric technician. *Id.* at 44, 63, 147, 173-93. Plaintiff last worked on May 16, 2007, and has allegedly been unable to work since then because of various physical and mental conditions. *Id.* at 146.

Following an automobile accident in May 2007, Plaintiff was diagnosed with degenerative disc disease. *Id*. at 330-31. Subsequent MRIs in June 2007 revealed that Plaintiff sustained

---

[3]Plaintiff filed a subsequent application for social security benefits, alleging March 2, 2011, as the onset date, and he received a favorable ruling from ALJ John T. Jacks. The findings from this favorable ruling cannot be considered here, as this court may only review the information that was available to the ALJ pertaining to this claim. *See Winston ex rel. D.F. v. Astrue*, 341 F. App'x 995, 998 (5th Cir. 2009).

2

protrusion and degeneration at the L5-S1 level and left foraminal stenosis[4] at the L4-L5 level.  *Id*. at 331.   Plaintiff received treatment for this disease through prescription pain medication, oral steroid medication, physical therapy, and lumbar steroid injections.  *Id*. at 266-317.  Plaintiff continued to see a neurologist until early 2010 for pain in his neck, lower back, and left leg, as well as a right foot drop.  *Id.* at 256.  Plaintiff stated that he is able to perform basic functions such as grocery shopping and cooking; however, he has difficulty carrying heavy objects and sitting or standing for long periods of time.  *Id*. at 50-51.

Plaintiff has also been diagnosed with mental impairments including bipolar disorder, mixed type, and opioid dependance.  *Id*. at 381-84.  He has received psychiatric treatment, and he has been prescribed numerous medications for both his bipolar disorder and opioid dependency.  *Id*.  Medical records indicated that Plaintiff is relatively stable with his treatment and medication; however, these records also indicated that he has trouble focusing and interacting with people on a regular basis.  *Id*.

Dr. Gray Hilsman, Plaintiff's treating psychiatrist, completed a Mental Impairment Questionnaire on or about January 14, 2010.  Dr. Hilsman noted Plaintiff's diagnoses of bipolar disorder (by history) and opioid dependency (in remission).  Dr. Hilsman opined that Plaintiff had marked restrictions in activities of daily living, extreme difficulties in maintaining social functioning, marked deficiencies of concentration, persistence, or pace, and one or two episodes of decompensation, each of extended duration.  Dr. Hilsman also opined that Plaintiff had a medically documented chronic affective disorder with a duration of at least two years, which

---

[4]Foraminal stenosis is "the narrowing of the cervical disc space caused by enlargement of a joint (the uncinate process) in the spinal canal. The majority of symptoms with this type of cervical spinal stenosis are usually caused by one nerve root on one side."  *See* http://www.spine-health.com/glossary/foraminal-stenosis (last visited July 3, 2013).

caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support.  Also present with the chronic affective disorder was a residual disease process that resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause decompensation.  Dr. Hilsman also concluded that Plaintiff had marked difficulties in his abilities to remember work-like procedures, to maintain attention for a two-hour segment, make simple work-related decisions, and to deal with normal work stress.  He also opined that Plaintiff had poor to no ability to complete a normal workday and work week without interruptions from psychologically based symptoms.  [10] at 491-97.

Dr. Glenda Scallorn, a psychological consultant with the Disability Determination Services ("DDS"), completed a Psychiatric Review Technique Form and a Mental Residual Functional Capacity Assessment on March 24, 2010.  Dr. Scallorn noted Plaintiff's bipolar disorder and that it was in partial remission with current medications.  Dr. Scallorn concluded that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in social functioning and in maintaining concentration, persistence, or pace, and suffered one or two episodes of decompensation, each of extended duration.  Dr. Scallorn concluded that the moderate limitations noted above do not prevent Plaintiff's ability to understand and follow directions adequately to complete routine tasks for at least simple work for two-hour blocks of time in an eight-hour day. She determined that Plaintiff was capable of completing a normal work week without excessive interruptions from psychologically based symptoms and is able to appropriately interact with co-workers and supervisors on a basic limited level.  Plaintiff would function better in a work environment that provided limited contact with the general public, and is capable of adapting to

4

routine changes in work if not major in scope.   [10] at 349-62.

## Burden of Proof

In *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988), the Fifth Circuit detailed the shifting burden of proof that applies to a disability determination:

> An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act.   Once the claimant satisfies his initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled.   In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f) (1988):
>
> 1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
> 2. An individual who does not have a 'severe impairment' will not be found to be disabled.
> 3. An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
> 4. If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.
> 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

(citations and footnotes omitted).   A finding that a claimant "is disabled or not disabled at any point in the five-step process is conclusive and terminates the . . . analysis."   *Harrell*, 862 F.2d at 475.

## The Administrative Law Judge's Analysis in This Case

As stated above, Plaintiff's hearing before the ALJ occurred on February 3, 2011. Upon considering the testimony and medical records, the ALJ rendered his decision that Plaintiff was not disabled on March 1, 2011. [10] at 14-27.

At Step One of the five-step evaluation process,[5] the ALJ found that Plaintiff had not engaged in any substantial gainful activity since May 16, 2007, the alleged onset date. *Id*. at 16. At Step Two, he found that Plaintiff suffers from the following severe impairments: degenerative disc disease of the lumbar spine, bipolar disorder, and a history of opioid dependency. *Id*.

At Step Three, the ALJ determined that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals Listing 1.04, 12.04, or 12.09. *Id.* at 17. Next, the ALJ examined the Plaintiff's Residual Functional Capacity ("RFC"),[6] and found that he retained the capacity to lift and/or carry twenty pounds occasionally and ten pounds frequently, sit for six hours in an eight-hour work day, stand and/or walk for six hours in an eight-hour work day, and perform occasional climbing, balancing, stooping, kneeling, crouching, and crawling. *Id.* at 18. Additionally, the ALJ noted that Plaintiff can perform simple, repetitive tasks, and can carry out detailed instructions and tasks with moderate limitations. *Id*. Finally, the ALJ found that the Plaintiff can occasionally, but not frequently, work with the general public, have occasional contact with co-workers and supervisors, and become accustomed to occasional and gradual changes in the work place, rather than frequent or dramatic changes. *Id*. In making this determination, the ALJ considered Plaintiff's symptoms and the extent to which they can be reasonably accepted as consistent with the objective medical evidence and other evidence,[7] and

---

[5]The ALJ applied the five-step evaluation process set forth in 20 C.F.R. § 404.1520(a). *Id.*

[6]"Residual Functional Capacity" is explained in the Regulations as an examination of a claimant's pain and symptoms of their disease and how they affect the claimant's ability to do work. RFC is the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. § 404.1545(a)(1).

[7]*See* 20 C.F.R. § 404.1529 and SSRs 96-4p, 96-7p.

also considered the opinion evidence.[8]  *Id.* at 19.

At Step Four, the ALJ found that Plaintiff was unable to perform any past relevant work, including that of a sales representative (DOT #279.157-010), a waiter (DOT #311.477-018), and a psychiatric technician (DOT #079.374-026). *Id*. at 21. Finally, at Step Five, the ALJ concluded that Plaintiff could perform a significant number of jobs in the national economy. *Id.* at 22. The ALJ based this conclusion on Plaintiff's age, educational background, work experience, RFC Assessment, and testimony from the vocational expert ("VE"). *Id*. These jobs included a silverware wrapper (DOT #318.687-018), a mail sorter (DOT #209.687-026), and a textile sorter (DOT #753.587-010). *Id*. Accordingly, the ALJ found that Plaintiff was not disabled. *Id*. at 23.

## Standard of Review

This court's review of the Commissioner's decision is limited to inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Hames,* 707 F.2d at 164 (citations omitted). However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are

---

[8] *See* 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 96-3p.

for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell*, 862 F.2d at 475. If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## Discussion of Issues

**I.  Whether the ALJ's Step Three Determination Was Erroneous and Contrary to Law**

At Step Three, the ALJ determined that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, subpart P, Appendix 1. [10] at 17. Specifically, the ALJ determined that Plaintiff does not meet or medically equal the requirements of sections 1.04, 12.04, or 12.09 of Appendix 1. *Id.* at 17-18.[9]

**A.  Listing 12.04: Affective Disorders**

As previously stated, the ALJ found that Plaintiff suffers from bipolar disorder and a history of opioid dependency, which the ALJ found to be severe impairments. *Id.* at 16. Plaintiff argues that the record, specifically Dr. Hilsman's opinion, supports a finding that Plaintiff's

---

[9] Because the court finds that this matter should be remanded with respect to the ALJ's analysis of Listing 1.04 at Step Three, the court will address Listing 12.04 first.

mental impairments meet or medically equal Listing 12.04.[10]  Listing 12.04 provides:

> 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> **The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied**.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the following:
>    a. Anhedonia or pervasive loss of interest in almost all activities; or
>    b. Appetite disturbance with change in weight; or
>    c. Sleep disturbance; or
>    d. Psychomotor agitation or retardation; or
>    e. Decreased energy; or
>    f. Feelings of guilt or worthlessness; or
>    g. Difficulty concentrating or thinking; or
>    h. Thoughts of suicide; or
>    i. Hallucinations, delusions, or paranoid thinking; or
>
> 2. Manic syndrome characterized by at least three of the following:
>    a. Hyperactivity; or
>    b. Pressure of speech; or
>    c. Flight of ideas; or
>    d. Inflated self-esteem; or
>    e. Decreased need for sleep; or
>    f. Easy distractibility; or
>    g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
>    h. Hallucinations, delusions or paranoid thinking;
>    or
>
> 3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

---

[10]Plaintiff confines his arguments to Listing 12.04; thus, the court will not address the ALJ's determination as to Listing 12.09.

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. § 404, subpart P, Appendix 1 (emphasis added).

The ALJ concluded that Plaintiff did not meet the requirements of Listing 12.04 because he failed to meet at least two of the criteria set forth in paragraph B above. He noted that Plaintiff had only mild restriction in daily living, moderate difficulties in social functioning, and moderate difficulties with regard to concentration, persistence, or pace. [10] at 17-18. The ALJ also noted that while Plaintiff had experienced one to two episodes of decompensation, each of extended duration, he did not meet the criteria in paragraph B(4) above because "repeated" episodes means at least three episodes within one year, or an average of once every four months. *Id*. at 17. The ALJ further concluded that Plaintiff did not meet the criteria set forth in Paragraph C above. *Id*. at 18.

The ALJ applied the correct legal standards and his decision is supported by substantial evidence. *See* [10] at 349-62 (examination and review by Dr. Glenda Scallorn, DDS Psychological Consultant). In his ruling, the ALJ gave little weight to the opinion of Dr. Gray Hilsman ([10] at 491-97), Plaintiff's treating psychiatrist, and instead relied primarily on the mental residual functional capacity assessment performed by Dr. Scallorn. *Id.* at 20-21. While Plaintiff complains that the ALJ erred in disregarding the opinion of Dr. Hilsman, the court finds that the ALJ was justified in doing so under the applicable legal standards.

An ALJ may rely on the opinions of a non-treating physician only if he first analyzes the opinions of the treating physician under the regulations as set forth in 20 C.F.R. § 404.1527(d)(2) before rejecting those opinions. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). *Id.* These factors include the treating physician's length of treatment, frequency of examination, nature and extent of treatment relationship, support of the physician's opinions by the medical evidence of record, consistency of opinion with the medical record as a whole, and specialization of the treating physician. *Id*. at 456. Although the opinions of the treating physician are normally given deference, such opinions may be rejected with a showing of good cause. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). An ALJ may find good cause for rejecting such treating physicians' opinions when those opinions are brief, conclusory, or unsupported by medically accepted diagnostic testing results. *Id.*; *see also Hector v. Barnhart*, 337 F. Supp. 2d 905, 921 (S.D. Tex. 2004).

Here, the ALJ found that the relevant medical opinions of Dr. Hilsman were unsupported and contradictory when measured against the objective diagnostic findings. [10] at 21. Dr. Hilsman's previous examinations and treatment notes concerning Plaintiff did not align with his

11

opinions from the Mental Examination Questionnaire, which indicates that the Plaintiff has "marked" or "extreme" impairments. *Id.* at 334-39, 492-97. Previous opinions from Dr. Hilsman indicate the Plaintiff to be only "mildly blunted" and within "normal limits" concerning his mood and behavior. *Id.* at 334-39. These opinions appear contrary to the subsequent Questionnaire. *Id.* at 21, 492-97. Dr. Hilsman's inconsistent opinions, combined with Dr. Scallorn's mental residual functional capacity assessment and the Plaintiff's testimony during the hearing,[11] provide sufficient evidence to support the ALJ's rejection of Dr. Hilsman's opinions.

Accordingly, Plaintiff's argument is without merit and the Defendant's Motion to Affirm [14] should be granted with respect to this issue.

    **B.**    **Listing 1.04: Disorders of the Spine**

As for Listing 1.04, disorders of the spine, Plaintiff argues that the ALJ's bare statement that "Specific consideration was given to Listing 1.04, disorders of the spine[,]" with no explanation, was clearly deficient and contrary to law. Specifically, Plaintiff argues that this statement or conclusion, without more, is contrary to Fifth Circuit law as stated in *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007).

In *Audler*, the claimant submitted medical evidence reflecting that she appeared to have met her burden of demonstrating the requirements for Listing 1.04A. *Audler*, 501 F.3d at 449. The Fifth Circuit found that the ALJ erred in failing to identify the listed impairment for which the claimant's symptoms failed to qualify, and in failing to provide any explanation as to how she reached the conclusion that the claimant's symptoms were insufficiently severe to meet any listed

---

[11] The ALJ noted that Plaintiff's testimony during the hearing was clear and articulate and that he experienced no problems describing his medical condition or the nature of his impairments. *Id.* at 21.

12

impairment. *Audler*, 501 F.3d at 448. The court noted that "[s]uch a bare conclusion is beyond meaningful judicial review." *Id*. (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.1996)).

The Social Security Act provides that

> The Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.

42 U.S.C. § 405(b)(1). According to Section 405, "the ALJ was required to discuss the evidence offered in support of Audler's claim for disability and to explain why she found Audler not to be disabled at that step. Although the ALJ is not always required to do an exhaustive point-by-point discussion, . . . the ALJ offered nothing to support her conclusion at this step and because she did not, 'we, as a reviewing court, simply cannot tell whether her decision is based on substantial evidence or not.'" *Audler*, 501 F.3d at 448 (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir.1986)).

Here, the ALJ summarily concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled Listing 1.04A, with no explanation of evidence to support his conclusion. Thus, the court is unable to determine whether the ALJ's decision is supported by substantial evidence.[12] *See Audler*, 501 F.3d at 448; *Spratley v. Astrue*, No. 1:07CV1264HSO–JMR, 2008 WL 5330563, at *6 (S.D. Miss. Dec. 12, 2008).

However, even if the ALJ did err in failing to provide an explanation or evidence to support

---

[12] The court is not concluding that the ALJ's decision is not supported by substantial evidence; rather, it is simply unclear whether his decision is supported by substantial evidence since no explanation was provided.

13

his decision that Plaintiff did not meet or medically equal Listing 1.04A, the court "must still determine whether this error was harmless." *Audler*, 501 F.3d at 448 (finding that the claimant appeared to have met her burden of demonstrating that she met the requirements for Listing 1.04A; therefore, absent a contrary explanation from the ALJ, "her substantial rights were affected by the ALJ's failure to set out the bases for her decision at step three"). "A procedural error is harmless so long as it does not affect the substantial rights of a party." *Spratley*, 2008 WL 5330563, at *6 (citing *Audler*, 501 F.3d at 448). Thus, Plaintiff must demonstrate that that the ALJ's error "casts into doubt the existence of substantial evidence to support the ALJ's decision." *Spratley*, 2008 WL 5330563, at *6 (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir.1988)).

Listing 1.04(A) contains the following criteria:[13]

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. § 404, subpart P, Appendix 1.

As previously stated, the ALJ found that Plaintiff suffers from degenerative disc disease of the lumbar spine, a severe impairment. [10] at 16. Plaintiff cited to medical records reflecting a positive bowstring sign,[14] bilaterally, in January 2010. *Id.* at 324. Plaintiff asserts that a

---

[13]Because the Plaintiff confines his argument to Listing 1.04(A), the court will not address subsections "B" and "C" of the Listing.

[14] When performing a bowstring test,

positive bowstring sign can indicate nerve root impingement.[15] *See* Brief [11] at 7. Records further reveal moderate limitation of motion in Plaintiff's lumbar region, diminished sensation to right root, moderate weakness in the left foot, and prominent mechanical findings in the low back indicating nerve root irritation. *Id.* Moreover, the record indicates positive straight leg tests in January 2010. *Id.* at 324, 257-58.

Based on the record, it appears Plaintiff has presented prima facie evidence indicating that he meets the criteria for Listing 1.04A. Thus, Plaintiff's rights were substantially affected by the ALJ's failure to provide an explanation for his determination at Step Three that Plaintiff failed to meet the requirements set forth in Listing 1.04A. *See Audler*, 501 F.3d at 448; *Spratley*, 2008 WL 5330563, at *6-*8 (vacating and remanding the ALJ's decision where the ALJ erred in failing to provide an explanation for her conclusion that claimant's impairments did not meet or equal a listed impairment, the claimant presented evidence corresponding to the requisite criteria under

---

> The patient rests face up on the examining surface. The examiner carries out straight-leg raising to the point when the patient experiences discomfort. Then, at that level, the examiner slightly flexes the knee and allows the foot to rest on his shoulder until the pain subsides. Then, the examiner applies firm pressure on the hamstrings. If this does not produce pain, the examiner moves his thumbs over the popliteal fossa, holds the knee straight, and applies sudden firm pressure on the popliteal nerve with the thumbs. Reproduction of pain in the leg or back shows the sign to be present; however, local pain in the popliteal fossa is of no clinical significance.

Houston D. Smith, III, *Soft Tissue Injuries in Georgia, Including Whiplash with Forms* § 3-32 (2d ed. 1998).

[15] The court found some support for the assertion that a positive bowstring sign indicates nerve root impingement or compression; however, the sources were scant. *See* Houston D. Smith, III, *Soft Tissue Injuries in Georgia, Including Whiplash with Forms* § 3-32 (2d ed. 1998) ("Many practitioners consider a positive [bowstring test] as irrefutable evidence of nerve root compression and an extremely significant finding in diagnosis of a ruptured intervertebral disk.").

Listing 1.04A, and the claimant's substantial rights were affected). Accordingly, the undersigned recommends that this case be remanded to the Commissioner for additional proceedings and an explanation regarding the previous finding at Step Three that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals Listing 1.04.

## II. Remaining Issues

Plaintiff claims that the ALJ erred in assessing Plaintiff's RFC and erred in his determination at Step Five. Because the court finds that the ALJ erred at Step Three as set forth above, the court need not address Plaintiff's additional arguments.

## Conclusion/Recommendation

Based on the foregoing, the undersigned recommends that the Commissioner's Motion to Affirm [14] be granted in part and denied in part, and the Plaintiff's Motion for Judgment on the Pleadings [11] be granted in part and denied in part as set forth herein. The undersigned recommends that this case be remanded to the Commissioner for additional proceedings and an explanation regarding the previous finding at Step Three that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals Listing 1.04.

## Notice of Right to Object

In accordance with the rules, any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and

recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 15th day of July, 2013.

s/ Michael T. Parker  
United States Magistrate Judge